Yes, may it please the court. Now, obviously a different kind of case than what the panel has been reviewing this morning, and I know since I've heard each and every one of us. We'll take you on our pro bono panel for criminal cases. Thank you. I think a pin would be appropriate. For immigration cases. Thank you, thank you. Sign up. That's right. Nonetheless, a very significant issue, an issue that reflects the forfeiture of a significant and substantial economic right afforded under the federal bankruptcy laws. And in this instance, it comes before the court, as you know, predicated upon the decision in the first instance of the bankruptcy judge based on a motion to dismiss a timely filed complaint to avoid non-dischargeability. The basis of the non-dischargeability was a Nevada state court judgment that had been pursued and over which the Nevada state court had exercised jurisdiction for some years. And resulted in a substantial judgment against the debtor. The bankruptcy court in the first instance, and the record is extremely brief at the time of oral argument. I mean, this was a very precipitous type of ruling. And one that I think is appropriate to frame in terms not only of what the decision was and what informed the decision. But from where the bankruptcy court was operating jurisdictionally and in terms of powers afforded it. I think it's worth noting that with respect to the filing of non-dischargeability actions, the timeliness of such an action. And remember here that the ultimate determination of dismissal was so severe because it was dismissal with prejudice. Because the deadline to file the non-dischargeability action had lapsed in the very short interim. Between the time that appellant learned of the forfeiture of its charter and the hearing on the motion. Because by the time we were before the judge on the motion, those charters had been reinstated. So the point being that it is the bankruptcy rules that empower a bankruptcy court to determine timeliness or untimeliness of a non-dischargeability action. In particular, it's bankruptcy rule 4007. That is a rule promulgated by the Supreme Court of the United States, not enacted by Congress. So there the bankruptcy court's power, if you will, in assessing this motion to dismiss is derived from rule. And under that rule, in particular 4007D, the bankruptcy court is empowered to extend for cause the period within which a non-dischargeability action is filed. So here we have the underlying source of power of the bankruptcy court in confronting what is a disfavored type of motion under the common law. It is in effect a plea in abatement that is recognized as creating severe consequences, as it did in this case, that can result in forfeiture and the failure to address the fundamental issue between the parties, the case and controversy between the parties, on the merits. This break- Do I hear you saying then that you don't disagree with the bankruptcy court, that the two dissolved corporations lack the ability to bring this claim? What you're arguing is that we should interpret the for cause provision as saying their failure to learn of this during the intervening four years constitutes for cause, just cause. I believe that the court could do that, and so no. In response to your question, I do not agree. We do not agree with the bankruptcy court's determination. But I think it is noteworthy to understand the matrix within which the bankruptcy court addresses the issue. Did you ask the bankruptcy court to extend the period? No, we did not. The precipitous nature of this and the forcefulness of the tentative really did influence the way in which the decision came about. The bankruptcy court thought it was important that, in his little statement, he said something to the effect that it's important in these- Finality. Yeah, the finality of the claims or whatever. It's important in the bankruptcy system that these things be resolved as promptly as possible. I didn't sense that he was conveying urgency. I sensed more he was speaking to the capacity issue, that it's important that the entities that appear in corporations that appear be in good standing, which in and of itself is a statement- Well, I don't want to quibble with you, but I think he was saying something else as well. But in any event, in all of this, don't we ultimately have to look- In the capacity issue, we have to look to Nevada law. And let's do that. That's where I'm headed at this point. And I think if we look at, again, the decision articulated by the bankruptcy court and then affirmed by the district court, we will see the fundamental defect and flaw. In the application of the Nevada law, there are two statutory regimens, if you will, one applicable to foreign corporations and one to domestic corporations. This was a domestic corporation. Exactly. Both corporations are domestic corporations. The language of the Nevada statute is distinct. It's different, and I think in a noteworthy way, because we have a fairly recent Nevada Supreme Court decision on an exactly parallel issue with respect to a Nevada foreign corporation. Under the Nevada foreign corporation statute, it states that if the charter of a foreign corporation or the authority to do business in the state of Nevada is suspended, it specifically and precisely says that they may not engage in litigation in the state of Nevada. In the state of Nevada. Now, in contrast to that is the statute that addresses domestic corporations. It does not have any such specific language saying that a domestic corporation may not engage in litigation anywhere, either in the state of Nevada or anywhere else. What it says is that it may not transact business. Different terminology, and I think a very fundamentally different concept. Ultimately, the domestic corporation statute also talks about the company acting as an insolvent entity, which I believe incorporates and contemplates the filing of lawsuits and the defending of lawsuits. The importance of this is underscored by the fact that to the extent that the judge is required to hypothesize or speculate on the ruling of the Nevada Supreme Court on this issue, we have the existence of the executive management case in the context of foreign corporations. Think of the Nevada Supreme Court had this issue in the context of a domestic corporation that might do the same thing as it did in an executive? My view is that that is the only reason we're inference to draw. You think they ought to certify that question to the Nevada Supreme Court? We've asked that you do. We've asked that you do, and I think that that would be an appropriate resolution. You don't think it would be wasting the Nevada Supreme Court's time? Well, I think that the Nevada Supreme Court certainly has an investment in the issue as its trial court spent many years with the case, as it has addressed the issue in the context of foreign corporations and gone against prior precedent in Nevada jurisprudence. So I think that it would be appropriate for them to determine if there is a parallel structure. To me, it is an only reasonable inference, and that if a court is going to speculate and hypothesize on what the Nevada Supreme Court would do, that it is... You think in light of executive management, we could fairly predict that they would do the same thing, and therefore we just ought to decide the question along... I do think that you can do that. Along the same lines as executive management? Yeah, I think so. I think it's the only reasonable inference. With a reasonable certainty, we could say that if they had this case, this is what they would say? I believe with the appropriate level of certainty. Despite the fact that they have earlier cases that preclude that? Well, the earlier case, again, precluding it in the context of a foreign corporation. But I think as to a domestic corporation, the notion that the Nevada court would penalize a domestic corporation in a fashion that it does not a foreign corporation, particularly taking into consideration that that domestic corporation statute talks about treating the corporation as an insolvent enterprise, preserving its existence for purposes of addressing issues of debtor-creditor relationships under Nevada law. Let's suppose we certify it to the Nevada Supreme Court, and they disagree with you and don't make that equivalency with executive management, and so they say, no, you can't sue if you don't have an active charter. Then is that the end of the case for you? Well, I think it is practically the end of the case. I think that's a different answer than whether legally the bankruptcy court acted appropriately given its jurisdiction. So you would come back to us and say, well, okay, we were wrong about Nevada law, but we ought to be able to go to the bankruptcy court under what you didn't ask for, but your opening theory, you wouldn't be coming back to us to pursue that? No. All right. We would not. Okay. Thank you. Good morning, Your Honors. May it please the Court, Irv Gross appearing on behalf of Mr. Krause, the affiliate. Unless the Court has immediate questions for me, I would like to address the issues raised by counsel, and essentially in the order that he raised them. I'd rather you, it might be more efficient if you address the certification issue first since you'll That's fine, Your Honor. He said he's willing to give up on that first one if the Nevada Supreme Court goes against him. Yes. Well, essentially I'll reiterate what is in our brief. There is a certain resonance to the notion of sending this to the Nevada Supreme Court. Obviously the issue of whether the ruling of executive management applies to a domestic corporation is central to this appeal. There's no question about it. Having said that, I don't know that the certification is going to completely resolve this case, or at least issues raised by this case. For example, there are two that immediately come to mind that we raise in our brief. Let's assume that the Nevada Supreme Court concludes that executive management applies to domestic corporations, which I'm prepared to address as a wholly separate issue. Executive management or the court in that case also said, but wait a minute, let's not go too far because foreign corporation, you still have a duty to promptly, promptly reinstate yourself, otherwise you will be dismissed. So there is a factual question, sub-question if you will, of whether the reinstatement that occurred here was prompt. How long from the time of notification to the time of reinstatement? From the time of notification? When you made your motion to the time they got it. Relatively short time, I think probably a couple weeks or three weeks, but with all due respect. Why wouldn't we send that, we don't make, we don't find facts, we don't determine facts, we would send it back to the bankruptcy court and say you determine whether or not. Exactly. But for our purposes the case would essentially be over, correct? Well, I suppose. Well, if Your Honor is saying if the Nevada Supreme Court held that executive applies to domestic, is it finished here or does it go to the bankruptcy court on the promptness issue, the answer is I believe it goes back to the bankruptcy court. I suppose ultimately there is an appellate process presumably available on whatever ruling the bankruptcy court makes on that issue. But I'd like to address a different point that Your Honor was at least suggesting, and that is when you asked how much time went by from the notification to the reinstatement, that ought not to be the question. That ought not to be the test. Because, candidly, that's a fairly short time. In executive management, the Nevada Supreme Court on this issue said by analogy or at least used as an example, another statute where a corporation, I'm paraphrasing the statute, I'm paraphrasing the court, but that if a foreign corporation didn't fulfill certain qualifications, within 45 days of the date the complaint was filed, the complaint would be dismissed. So from the date this complaint was filed to the date of reinstatement of the two corporations, now you're not talking about, in my view, a prompt period. 75 days as opposed to whatever, two weeks, 75 days for ASRN, 81 days, I believe, for SMI, I think it's Sound Management Inc., that's not prompt. And that ought to be the standard if one is going to look at this issue and say, okay, let's see if they reinstated promptly, assuming executive management applied to domestic corporations. Well, from the date they filed the complaint, at least ASRN, to the date it reinstated, 75 days. In and of itself, I submit, Your Honor, not prompt. Well, what does executive management say on that? Let's hypothesize Nevada says we extend the same rule we adopted for foreign corporations to domestic corporations. What is the rule about timeliness? That's what I... Executive management. Perhaps I didn't articulate it very well a moment ago. That's what I was suggesting. In that case, on that issue, Nevada Supreme Court said, look at this other statute. I think it was NRS 80.210 or one of those. And that statute said if a corporation fails to qualify in certain ways, it has a 45-day window to be reinstated, otherwise it will be dismissed. That's the statute that the Nevada Supreme Court decided to use as an example of what is prompt. So why would that question be posed as part of the certification question to the Nevada Supreme Court? If you extend the executive management standing capacity rule, what rule would you extend insofar as timeliness? I don't disagree with that, Your Honor. If those are both answered by the Nevada Supreme Court, such that we then have, as Nevada established Nevada law, what the rules are for domestic corporations, then the bankruptcy court could decide whether or not they come within the timeliness ground, could it not? Yes, if it has to. So that would be dispositive. Not only for us, but for the state. If the Nevada Supreme Court chose to do it, and I'm not a mind reader, but I suppose the Nevada Supreme Court could say, well, that's a factual issue that we're not going to deal with. They might, but then that would be the purpose of certification is so that we don't make law that has application for other Nevada corporations that will come back to haunt others or whatever, or that will have some impact on Nevada law. It has to be dispositive, though. So because what the Supreme Courts of other states don't like is to go through, answer a question, and then have us turn around and find that there's some other basis on which we decide to go off and decide the case. That's why I asked counsel for whether if the Nevada court comes back with a definitive answer that executive management is the governing rule, that's one thing. If they come back and say, no, you don't get a chance. If you didn't have it, you lose on that. Then he doesn't come back and say, okay, well, now we get to go off and try another. I'm not saying he couldn't do that. I'm just saying that that's relevant to our analysis. And frankly, Your Honor, if the court, and I know the court has read my brief, we did not oppose certification. We said, sounds good, but here are some questions that ought to be asked before we just send it over. No, those are good questions. No, we have to certify. We have to file an opinion and all that other stuff. And there was a third question I raised in the brief, and I don't know the answer, but I raised it, and that is a supremacy clause issue, and that is if the Nevada Supreme Court says, excuse me, executive management applies to a domestic corporation, and the time within which they reinstated is prompt. The bankruptcy court, among other things, said, look, as a matter of federal bankruptcy, federal bankruptcy law, I believe, Judge Bufford speaking, I believe that it is important for the bankruptcy system that these guidelines, well, they're more than guidelines, that the rule be adhered to. I think that may be what Your Honor was referring to in terms of the judge's comments at trial, and it's in the record. And I believe that the bankruptcy court was clearly saying that we've got a rule 4007 here, we've got a cutoff date, a federal bankruptcy rule that says you must bring it within a certain period of time. It also allows them to extend the time. It does. Suggesting that the rule makers thought that that time limit was not hard and fast. And it's not a statute of limitations, just for the record. Mr. Griffith, I was just looking at the executive management and the promptness. Yes. You know, they mention the term 45 days, but it's in a footnote in a CF site to Nevada Revised Statute 821-10. And I believe that's what he said, Your Honor. Not an unqualified corporation to commence. I mean, they don't come out and say promptness means, promptly means 45 days. But I didn't say that, Your Honor. If I may, I did say that they used that statute certainly as an example of what is prompt. If I may, Your Honor, because I know I do have a limited amount of time, may I address the reason why we don't believe executive management applies? And I understand the court may ultimately conclude. Go ahead. Let's have the Nevada court decide. The statutes, the foreign statute, the Nevada Supreme Court said, look, what we're going to do, because it's our job, we have to give meaning to this statute, the statute that governed the foreign corporation in that context. And it said, look, let's look at the language. And they focused on two words, the word maintain and the word unless. And they said, these words are ambiguous. Maintain in the context of this statute could just mean, okay, you've got to stop and you can't go forward until you reinstate and then you can go forward. The statute that applies to domestic corporations reads differently, obviously, is a different statute. It is where the other statute was arguably ambiguous, certainly the Nevada Supreme Court thought so, using words like maintain and like unless or until. The statute affecting domestic corporations is very clear. Your rights are revoked, your charter is revoked, and you can't do any further business. Judge Bufford, the trial court, found that very clear. And I submit to the court that the Nevada Supreme Court could very well, and I don't know because I'm not a mind reader, but I can understand, I can see where that statute is different from the one they were dealing with. There are policy reasons, for example, as I indicated in my brief, why a foreign corporation may actually be treated more leniently than a domestic corporation. But if we were to go that route, and you may well be right, we're not saying that they're automatically going to come down. But if we did that, we would then, in fact, be doing what federal courts are somewhat reluctant to do, which is distinguish a ruling of the Nevada Supreme Court and create not binding law in Nevada, but nonetheless binding law in the Ninth Circuit for all bankruptcy proceedings that would be perhaps contrary where the Nevada Supreme Court would come out. So I certainly can't argue with that proposition as a proposition, Your Honor. But I will say also, just as an aside, executive management was, I don't know, was a 2002 case six years ago. If they really were the same, if the result of this decision ought to apply to domestic corporations as well, one would think that it's an issue for the legislature. Let the legislature change its statute and say the domestic corporation can revive itself and continue to do business. Arguably, it isn't even the province of the court to make that decision, but obviously... They can tell us that. Actually, not this court, but the Nevada Supreme Court. But I'm saying the Nevada Supreme Court can tell us that. Oh, yeah, yeah. I suppose so. Yeah. Well, I'll rest now. I'm practically over anyhow, Your Honor. But I want to reiterate, just so we're clear, we're not adverse to certification. Look, we understand. Yeah. You're right to raise these issues because we don't want to send over a red herring to them. Right. Okay. Thank you. If I may very briefly... You want to talk us out of certification? No, I don't want to do that. I do want to underscore, though, what I perceive as being important in terms of what the bankruptcy court did, because I think the bankruptcy court was erroneously looking at the foreign corporation statute and made specific reference that there was a prohibition in the statute governing this case, a prohibition to maintaining lawsuits. That clearly only applies to foreign corporations. We're talking about the other statute. We're talking about reasoning by analogy, transact business. We do understand that. Thank you. All right. Counsel, thank you. Thank you so much. Thank you both. Interesting case. The case argued is submitted, and we will stand. Oh, no. Sorry. One more case. No. Yes. One more case. More. It's submitted on the briefing. No, no, no. The last case on calendar, Moore v. Burt Bell, Pete Rozelle, an NFL retirement plan is submitted on the briefing. Thank you.
judges: Fisher, Paez, Robart